Robert SEPULVEDA; Richard Nervik; William J. Merino; William J. Harris; Frank Aguirre, Jr.; Ronald C. Adler, Plaintiffs–Appellants,

v.

PACIFIC MARITIME ASSOCIATION; International Longshoremen's & Warehousemen's Union, Local 94, Defendants–Appellees.

No. 87–6283.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Decided June 23, 1989.

George W. Shaeffer, Jr., Silver, Kreisler, Goldwasser & Shaeffer, Newport Beach, Cal., for plaintiffs-appellants.

J. Kevin Lilly, Gibson, Dunn & Crutcher, Newport Beach, Cal., and Richard S. Zuckerman, Leonard, Carder & Zuckerman, San Francisco, Cal., for defendants-appellees.

Before WALLACE, CANBY and TROTT, Circuit Judges.

WALLACE, Circuit Judge:

Seven unsuccessful applicants for employment as foremen of longshoremen brought this action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against Pacific Maritime Association (Pacific Maritime) and International Longshoremen's and Warehousemen's Union, Local 94 (Local 94), alleging breach of a collective bargaining agreement (Agreement). The district court dismissed the action with prejudice, finding that the seven lacked standing to sue for breach of the Agreement. Four of them (Applicants) took this appeal. The district court had jurisdiction under 29 U.S.C. § 185 and we have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

Pacific Maritime represents its employer members in collective bargaining with the International Longshoremen's and Warehousemen's Union (ILWU). Pacific Maritime member companies employ three groups of employees who belong to three bargaining units covered by three distinct labor contracts. At the Los Angeles/Long Beach Harbors (the Harbors), the longshoremen's unit is represented by ILWU Local 13, the marine clerks by ILWU Local 63, and the walking bosses and foremen by ILWU Local 94. Employees are hired into each unit primarily by means of a formal registration process under the respective contracts.

Pacific Maritime and Local 94 have executed successive collective bargaining agreements covering the terms and conditions of employment of walking bosses and foremen. The Agreement details the procedure for registering foremen. The registration process is administered by a joint union-management committee (the Committee). The Agreement provides that the Committee "shall select the best qualified applicant or applicants" on the basis of the applications on file, the information presented by the applicants, and personal interviews. The Agreement enumerates both "qualification" and "disqualification" factors which the Committee must consider.

Applicants were denied registration as foremen at the Harbors. Applicants allege that Pacific Maritime and Local 94 breached the Agreement by not registering them. Applicants contend that the Committee disregarded or misapplied the "qualification" and "disqualification" factors and thereby failed to register the "best qualified applicants" as mandated by the Agreement. Applicants were not bargaining unit employees: they were members of neither Local 94 nor the foremen's bargaining unit covered by the Agreement.

The parties stipulated to a bifurcated trial at which the issue of Applicants' standing would be tried first without a jury. At the conclusion of Applicants' case, the district court granted Pacific Maritime and

Local 94's motion to dismiss pursuant to Fed.R.Civ.P. 41(b). The court found that Applicants lacked standing to sue for breach of the Agreement, reasoning that Applicants failed to show that the Agreement was made for their benefit.

## II

■ In a bench trial, the court may involuntarily dismiss an action under Rule 41(b) when the court finds, after considering the evidence, that the plaintiff has not established a prima facie case. Fed.R.Civ.P. 41(b); *Stone v. Millstein*, 804 F.2d 1434, 1436–37 (9th Cir.1986) (*Stone*). We review the district court's dismissal under Rule 41(b) the same as a judgment in defendant's favor after a bench trial: the district court's legal conclusions are reviewed independently and its findings of fact for clear error. *Stone*, 804 F.2d at 1437. We will reverse the court's findings of fact only upon a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Gregory K. v. Longview School District*, 811 F.2d 1307, 1310 (9th Cir.1987) (*Gregory K.*). We review the court's findings of fact for clear error even if the court relied exclusively on a written record. *Gregory K.*, 811 F.2d at 1310.

## III

■ To have standing to bring an action for breach of a collective bargaining agreement, a party must be either a member of the collective bargaining unit covered by the agreement or a third party beneficiary of that agreement. *Karo v. San Diego Symphony Orchestra Association*, 762 F.2d 819, 821 (9th Cir.1985) (*Karo*). Conceding that they are not members of the collective bargaining unit until covered by the Agreement, Applicants argue that they are third party beneficiaries.

■ To determine whether Applicants are third party beneficiaries to the Agreement, we apply California law to the extent it is compatible with federal labor policy. *Id.* "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Id.* at 821–22, *citing Garcia v. Truck Insurance Exchange*, 36 Cal.3d 426, 436–37, 204 Cal.Rptr. 435, 439–40, 682 P.2d 1100, 1104–05 (1984) (*Garcia*); *Strauss v. Summerhays*, 157 Cal.App.3d 806, 816, 204 Cal. Rptr. 227, 233 (1984); *Kirst v. Silna*, 103 Cal.App.3d 759, 763, 163 Cal.Rptr. 230, 232 (1980). In discerning intent, the court may look to evidence outside the four corners of the document, such as the circumstances and negotiations of the parties in making the contract. *Garcia*, 36 Cal.3d at 437, 204 Cal.Rptr. at 439. "Although the beneficiary need not be named in the contract, he must be a member of a class referred to and identified in it." *Karo*, 762 F.2d at 822.

■ As evidence of the intent of the parties to the Agreement, Applicants offered the Agreement, the application which all prospective registrants had to complete, and minutes from a meeting of the Committee. The court found that this evidence did not establish that Pacific Maritime and Local 94 intended the Agreement to benefit or confer rights upon Applicants. We can reverse only if the court's finding was clearly erroneous. *See Local 3–7, International Woodworkers of America v. DAW Forest Products Co.*, 833 F.2d 789, 793 (9th Cir.1987) (finding regarding intent of parties in making contract reviewed for clear error); *May v. Nevada Irrigation District*, 600 F.2d 1280, 1282 (9th Cir.1979) (same).

Applicants first argue that they are members of the class referred to and identified by the Agreement. They point out that the Agreement requires the Committee to maintain a list of prospective foremen. Applicants are on that list. Applicants also point to several passages in the Agreement which provide that the Committee shall register new foremen from applications on file.[1] Applicants' applications are on file.

---

1. Applicants refer to the following passages in the Agreement:

8.11 The Foremen's Joint Labor Relations Committee shall establish and maintain a list of

The district court found that nothing in these passages demonstrates an intent to give non-employee job applicants the right to claim benefits or a right of performance under the contract. Although these passages may indeed characterize Applicants,

fully registered foremen, and a list of prospective foremen as they deem necessary based upon the needs of the Employers of foremen in the Los Angeles/Long Beach Harbors.

8.12 The Foremen's Joint Labor Relations Committee and the Registration Sub-committee shall act in a nondiscriminatory manner....

8.13 Vacancies in the list of fully registered foremen, probationary foremen, and in the list of prospective foremen shall be filled by the Registration Sub-committee acting under the direction and control of the Foremen's Joint Labor Relations Committee. In so doing, it shall select the best qualified applicant or applicants on the basis of applications on file with it that meet the requirements for consideration for registration, the information presented to the sub-committee, and personal interview.

. . . . .

8.21 Whenever it is determined that one or more vacancies exist in the list of prospective foremen, the Registration Sub–Committee—acting under the direction and control of the Foremen's Joint Labor Relations Committee—shall select the best qualified applicant or applicants on the basis of applications on file with it, the information presented to the sub-committee, and personal interview. A man shall be considered for the prospective foremen list only if he has an active application for registration on file when such consideration is given.

. . . . .

8.53 An applicant shall be accepted only if he is qualified for the open vacancy.

. . . . .

8.6 Qualification factors that will be considered.

(a) Each applicant must have a background of experience in the shipping and stevedore industry. The bare minimum shall be five (5) years of experience as a longshoreman or equivalent other employment, but additional credit shall be given for time in excess of the five (5) years.

(b) Each applicant's record as a temporary foreman shall be reviewed by the Sub–Committee.

(c) Each applicant must be mentally able, physically fit and capable of performing the functions of a foreman, with no physical handicaps that will limit his activities aboard ship or on the dock in the performance of his duties. No applicant shall be accepted who is an habitual drinker, or who is subject to seizures, blackouts or mental deficiencies that would endanger the lives of his fellow workers.

(d) Each applicant must have the ability to perform and direct work on all operations coming under his authority as a foreman. This extends to the man's ability to get men to work in accordance with safe and productive methods.

(e) Each applicant must have the ability to formulate and convey clear and concise work instructions to the men working under him.

(f) Each applicant's work knowledge, including training and ability shall be thoroughly reviewed by the Sub–Committee.

(g) Each applicant must have a good knowledge of rigging.

(h) Knowledge and understanding of sound safety practices are of great importance in the consideration of an applicant.

(i) Each applicant's record with respect to discipline shall be reviewed and considered. Each applicant's work record must show a general habit of compliance with the working rules. Each applicant must have the ability to take and carry out orders.

(j) Each applicant must have an understanding of the Contract and must be willing to carry out all of the provisions of the Contract.

(k) Each applicant must be a steady worker. Flops, going in or out of gangs, not registering, picking jobs, etc., shall count against the applicant.

(*l*) Each applicant's record of earnings and hours shall be reviewed. For Example: These records may show whether or not a man is dependable at all times.

(m) Each applicant must be a citizen of the United States.

(n) Where the Foremen's Joint Labor Relations Committee concludes that all other qualifications of any two or more applicants are equal, length of time employed in the shipping and stevedore industry shall be determinative.

. . . . .

8.71 All of the above qualifications must be met by each individual with no exceptions; there shall be no extenuating circumstances.

. . . . .

8.81 An applicant shall be disqualified for any of the following:

(a) Possible lack of availability whenever needed.

(b) Possible unreliability.

(c) Habitual drinking, drug addiction, or unsound mental condition.

(d) Physical handicap.

(e) Lack of ability to read and write the English language or illegible penmanship.

(f) Poor safety record or knowledge.

(g) Lack of knowledge of job.

(h) Inability to get men to work with him.

(i) Lack of supervisory ability.

(j) Insufficient experience in the industry or inadequate distribution of experience among various categories.

(k) No consideration shall be given to an applicant while a complaint against him is being processed under the grievance procedure and until the complaint has been processed to a conclusion.

they do so in a most nondescript manner. These passages indicate that the Committee may only hire persons who properly applied for and are qualified for the job and that the Committee must keep a record of all applicants. The registration provisions apply equally to any individual seeking the position. *Karo*, 762 F.2d at 822 (agreement equally applicable to any person seeking position does not indicate intent to confer third party beneficiary rights on applicants). Moreover, Applicants have not shown that these procedures were intended for their benefit. It appears more likely that the procedures were intended for the mutual benefit of Pacific Maritime and Local 94. The procedures help to ensure that foremen selected are competent to discharge their responsibilities—a goal of Pacific Maritime—and also maintain the standards of the trade union—a goal of Local 94. *See id.* (applicant failed to show that application procedures were not for the benefit of the employer). We conclude that the district court was not clearly erroneous in finding that the passages referred to by Applicants do not indicate an intent to make them third party beneficiaries to the Agreement.

Applicants next argue that certain additional documents indicate they are third party beneficiaries to the Agreement. Applicants first contend that the registration application and accompanying instruction sheet created an expectation that the Committee would comply with the Agreement in registering foremen. Applicants point to the following language:

> Persons who have not been fully registered as a Class "A" longshoreman or clerk for at least five (5) years or persons who are not registered in Los Angeles–Long Beach are not eligible for selection.

> This application is subject to the provisions of the [Agreement].

> . . . .

> Do you agree that this application for registration as Foreman of Longshoremen is to be considered by the International Longshoremen's and Warehousemen's Union (ILWU) and the Pacific Maritime Association (PMA) on the basis of the rules and procedures the ILWU and the PMA agree to use in considering applications for registration?

> Yes_____ No_____

In addition, the application provides that an applicant may file a grievance with the Committee if he is dissatisfied with the action on his application. Finally, Applicants contend that minutes from a Committee meeting establish that Applicants are third party beneficiaries to the Agreement. The minutes reflect that the Committee acknowledged that registration of foremen is governed in strict accordance with the Agreement.

The district court found that this extrinsic evidence did not establish that Pacific Maritime and Local 94 intended to make Applicants third party beneficiaries to the Agreement. To the extent that the language in the application and minutes confirms that the registration procedures are to be administered pursuant to the Agreement, Applicants are repeating their first argument: the terms of the Agreement reflect an intent to confer third party beneficiary status on Applicants. As we held above, the district court's finding to the contrary on this issue was not clearly erroneous. Likewise, one cannot infer from the additional documents that the grievance procedure was not intended to benefit Pacific Maritime and Local 94. *See Karo*, 762 F.2d at 822. This formal mechanism, whereby dissatisfied applicants may have their files reviewed, increases the likelihood a qualified but errantly rejected applicant will be registered. This assists in the selection of the best qualified of those applying, but it does not necessarily grant standing to bring suit to a disappointed applicant. We cannot conclude that the district court's finding was clearly erroneous.

AFFIRMED.