**KLAMATH WATER USERS ASSOCIATION, et al.,**
Plaintiffs,

v.

**Roger PATTERSON, Director, Bureau of Reclamation, PacifiCorp, et al.,**
Defendants.

No. Civ. 97–3033–HO.

United States District Court,
D. Oregon.

April 27, 1998.

Richard S. Fairclo, Proctor Puckett & Fairclo, Klamath Falls, OR, Paul S. Simmons, Andrew M. Hitchings, Stuart L. Somach, Donald B. Mooney, Donald B. Gilbert, DeCuir & Somach, Sacramento, CA, for Klamath Water Users Protective Association, Klamath Drainage District, Henzel Properties, Ltd., Sam Henzel.

Kristine Olson, U.S. Attys. Office, Portland, OR, Maria A. Iizuka, U.S. Dept. of Justice, Sacramento, CA, Stephen M. MacFarlane, Dept. of Justice, Environment & Nat. Res. Div., Sacramento, CA, James L. Sutherland, Asst. U.S. Atty., Eugene, OR, Lois J. Schiffer, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, David W. Harder, Environmental & Natural Resources Div., U.S. Dept. of Justice, Denver, CO, for Roger Patterson, Karl E. Wirkus, Eluid Martinez, Patricia Beneke, Bruce Babbitt, Bureau of Reclamation, U.S.A.

Barbara Dean Craig, Richard S. Gleason, Stoel Rives, Portland, OR, for Pacificorp.

William C. Carpenter, Jr., Eugene, OR, Michael R. Sherwood, Earthjustice Legal Defense Fund, San Francisco, CA, for Northcoast Environmental Center, Pacific Coast Federation of Fishermens Associations, Institute for Fisheries Resources, Klamath Forest Alliance, Mazamas, Oregon Natural Resources Center, Wilderness Society, Waterwatch of Oregon.

Marianne G. Dugan, Western Environmental Law Center, Eugene, OR, Richard Allen Cross, Alexander & Karshmer, Berkeley, CA, for Yurok Tribe.

## ORDER

HOGAN, District Judge.

The central issue before the court is whether plaintiffs are third party beneficiaries to the 1956 contract between PacifiCorp (formerly Copco) and the Bureau of Reclamation (Reclamation) regarding the operation of the Link River Dam located at the outlet of Upper Klamath Lake in Southwest Oregon.

Plaintiffs filed this action on June 4, 1997, alleging four claims. This court subsequently denied plaintiff's motion for injunctive relief, granted Reclamation's motion for summary judgment on plaintiffs' National Environmental Policy Act (NEPA) claim, and, by stipulation, dismissed plaintiffs' remaining claims without prejudice.

PacifiCorp's amended counterclaim is the sole remaining substantive matter before the court. The counterclaim seeks a declaration of plaintiffs' rights under the 1956 contract [# 147].

### BACKGROUND

The Klamath Project, located within the Upper Klamath and Lost River Basins in Oregon and California, was authorized by Congress in 1905 pursuant to the Reclamation Act of 1902 (32 Stat. 388). In 1905, in accordance with state water law and the Reclamation Act, the United States appropri-

ated all available water rights in the Klamath River and Lost River and their tributaries in Oregon and began constructing a series of water diversion projects.

In 1917, the United States and Copco entered into an agreement under which Copco would construct the Link River Dam and then convey the dam to the United States. In return, Copco and the United States entered into a fifty-year contract (1917–1967) which gave Copco the right to operate the dam. The contract was amended in 1920 and 1930, and was renewed in 1956 for an additional fifty years (1956–2006). The 1956 renewal of the Link River Dam contract remains in effect and is the subject of dispute here.

The 1956 contract states it was entered into pursuant to the Reclamation Act and "acts of Congress relating to the preservation and development of fish and wildlife resources." Federal Defendants' Memorandum in Support of Motion for Summary Judgment on Defendant PacifiCorp's Counterclaim [# 163], Exhibit 1, p. 1.

Article 6 of the 1956 contract, highlighted by plaintiffs, states:

> No Klamath Water shall be used by Copco when it may be needed or required by the United States or any irrigation or drainage district, person, or association obtaining water from the United States for use for domestic, municipal, and irrigation purposes on Project Land . . . .

*Id.* at p. 5.

Article 15 of the 1956 contract, relied upon by defendants, states the contract:

> binds and inures to the benefit of the parties hereto, their successors and assigns, including without limitation any water users' organization or similar group which may succeed either by assignment or by operation of law to the rights of the United States hereunder.

*Id.* at 8. The United States and Copco are the only named parties to the 1956 contract. The United States has not assigned any of its rights under the 1956 contract to any water users' organization, nor has any such organization succeeded to those rights.

The 1956 contract also states:

> Copco may regulate the water level of Upper Klamath Lake between the elevations 4143.3 and 4137, . . . except at such times, and on such conditions, as may be satisfactory to the Contracting Officer [the United States]: *Provided,* That the Contracting Officer from time to time may specify a higher minimum elevation than 4137 if in his opinion such must be maintained in order to protect the irrigation and reclamation requirements of Project Land.

*Id.* at p. 3.

Since completion of the Klamath project, Reclamation and water users in the basin have entered into over 250 water delivery contracts, also called repayment contracts. The vast majority of these repayment contracts provide:

> On account of drought, canal breaks, inaccuracy in distribution, or other causes, there may occur at times a shortage in the water supply provided for herein for lands of the District and, while the United States will use all reasonable means to guard against such shortages, in no event shall any liability accrue against the United States . . . for any damages, direct or indirect, arising therefrom . . . .

Declaration of Karl Wirkus [# 163] Ex. B, pp. 12–13.

It is not disputed that Reclamation arranged for Link River Dam to be built in significant part to help it satisfy its contractual obligations to water users in the basin, such as plaintiffs. However, the project served other federal purposes, such as impounding water to flood the adjacent wildlife refuges. Copco's interest related primarily to controlling the flow of water to the Copco-owned hydroelectric facilities downstream from Link River Dam. In 1961, the Federal Energy Regulatory Commission required Copco to release water from Link River Dam to provide certain minimum flows for fish downstream (called "FERC" flows).

Operation of Link River Dam is also subject to the requirements of federal statutes, such as the Endangered Species Act. The coho salmon of the lower Klamath River has been listed as threatened and two species of

sucker fish, the Lost River and shortnose suckers, located in and around the Klamath Project, are listed as endangered. In 1992, the United States Fish and Wildlife Service issued a Biological Opinion that required certain minimum elevations for Upper Klamath Lake to avoid jeopardy to protected species.

In addition, the Secretary of Interior has recognized that a number of tribes, including the Klamath, Yurok and Hoopa Valley tribes, hold fishing and water treaty rights in the basin. These rights appear to have a priority date of either "time immemorial" or the date of the respective treaties, making them senior to any water rights obtained by the United States or irrigators in the Klamath Project. *See, e.g., United States v. Adair*, 723 F.2d 1394, 1412 (9th Cir.1984).

In recognition of the federal government's various obligations related to the Klamath Project, Reclamation initiated a public process to establish a new operating plan for the Klamath Project. According to representations made to the court during oral argument in this matter, for the next several years, Reclamation intends to issue one-year interim plans while formulating a long term plan.

Pursuant to this policy, on April 25, 1997, Reclamation circulated to interested parties, a draft of its proposed 1997 interim plan for the Klamath Project. On May 1, 1997, Reclamation issued its final 1997 interim plan. Soon after, PacifiCorp stated it would not implement the plan because the required flow levels would force it to violate its FERC license. PacifiCorp's FERC license required FERC flows in September at 1,300 cubic feet per second (cfs), while Reclamation's 1997 plan allowed for only 1,000 cfs.

Irrigation groups were aware that PacifiCorp and Reclamation were attempting to negotiate a resolution of this impasse. On June 2, 1997, at the irrigators' request, PacifiCorp attorneys met with members of the irrigation community to discuss implementation of the 1997 plan and the 1956 contract. Large portions of the meeting were tape recorded by members of the irrigation community and later transcribed.

On June 3, 1997, Reclamation and PacifiCorp agreed upon a short-term modification to the 1956 contract. The modification directed PacifiCorp to implement the 1997 plan, contingent upon FERC concurrence. Plaintiffs were not included in the negotiations that led to this modification.

On June 4, 1997, plaintiffs filed this action seeking a temporary restraining order and alleging four claims, including a claim for breach of the 1956 contract based on their third party beneficiary status.

On June 17, 1997, this court denied plaintiff's motion for a temporary restraining order [# 40]. PacifiCorp filed a counterclaim on July 7, 1997, seeking a declaration of rights with respect to plaintiffs' standing under the 1956 contract [# 60]. On July 29, 1997, following briefing and oral argument, the court granted Reclamation's motion for summary judgment on plaintiffs' NEPA claim [# 132].

On September 25, 1997, plaintiffs moved for voluntary dismissal without prejudice of their remaining three claims [# 137, 139]. Pursuant to stipulation of the parties, the court granted dismissal of plaintiffs' claims without prejudice on the condition that Reclamation be joined as a necessary party to PacifiCorp's counterclaim [è146, 148]. PacifiCorp filed an amended counterclaim [# 147] on October 29, 1997.

Now before the court are the parties' cross motions for summary judgment and to dismiss defendant PacifiCorp's First Amended Counterclaim [è151, 154, 161, 164]. Also before the court is defendant PacifiCorp's motion to strike reference to the tape recorded transcript of the pre-litigation meeting between irrigators and PacifiCorp attorneys [# 200].

*DISCUSSION*

1. *Standard:*

Summary judgment is appropriate if the court finds there is *no genuine issue of material fact* and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989).

All reasonable doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez,* 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences can be drawn, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of North America,* 638 F.2d 136, 140 (9th Cir. 1981).

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will only be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248 (9th Cir.1997), citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). It is improper to inquire into the adequacy of the evidence when deciding whether to dismiss for failure to state a claim. *Yamaguchi v. United States Dept. of the Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997), citing *Campanelli v. Bockrath,* 100 F.3d 1476, 1484 (9th Cir. 1996). Instead, "the court must accept as true the plaintiff's allegations contained in the complaint and view them in the light most favorable to [plaintiff]." *Id.* citing *Scheuer v. Rhodes,* 416 U.S. 232, 235, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### 2. *Declaratory Relief:*

■ Declaratory relief is appropriate if a judgement will clarify and settle the legal relationships in question and if it will relieve uncertainty giving rise to the controversy. *Natural Resources Defense Council v. EPA,* 966 F.2d 1292, 1299 (9th Cir.1992). Defendant PacifiCorp asserts declaratory judgment is appropriate here to resolve the uncertainty surrounding current negotiations between it and Reclamation regarding the 1956 Link River Dam contract. Plaintiffs initiated this litigation and have predicted future litigation pertaining to their rights under the 1956 contract. The court finds that this counterclaim involves an actual controversy and so declaratory judgement is appropriate under 28 U.S.C. § 2201.

### 3. *Third Party Beneficiary Rights:*

Plaintiffs allege they are third party beneficiaries to the 1956 contract because Link River Dam is operated for their benefit. They contend the parties to the 1956 contract were required to obtain the irrigators' approval prior to any modifications to that contract.

■ For a party to sue as a third party beneficiary, the third party must show the contract was specifically intended to be for that party's direct benefit. *German Alliance Ins. v. Home Water Supply,* 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195 (1912). PacifiCorp relies on *Vidimos, Inc. v. Laser Lab Ltd.,* 99 F.3d 217, 219 (7th Cir.1996), which states: "Contracts often benefit persons besides the signatories, and breach harms them. To allow all these injured parties to sue would expose contract promisors to enormous potential liabilities ... and would be inconsistent with the limitations that tort law imposes on remote liability."

■ The intention to specifically benefit a third party may be express or implied. Generally, beneficiaries of a government contract are assumed to be incidental beneficiaries and may not enforce the contract unless there is a "clear intent" to the contrary. *Beckett v. Air Line Pilots Ass'n,* 995 F.2d 280, 288 (D.D.C.1993). The court may look beyond the contract to make such a determination. *Sepulveda v. Pacific Maritime Ass'n,* 878 F.2d 1137, 1139 (9th Cir.1989). Such a showing entails an "onerous burden of proof" because of the long-standing rule that "[a]n individual who is not a party to a contract ... does not have a right to sue for breach of that contract merely because he would benefit from its performance." *Maniere v. United States,* 31 Fed.Cl. 410, 417 (1994); *Berberich v. United States,* 5 Cl.Ct. 652, 655 (1984).

As evidence of their third party beneficiary status, plaintiffs note the introductory recital language of the 1956 contract, which states its renewal is in the best interests of users of the water in the Klamath River Basin. Declaration of Paul Simmons, Ex. I, p. 3. Plaintiffs also point to other factors they argue indicate an intent to directly benefit irrigators, such as the contractual prohibition on releasing water that may be needed for irrigation, as well as statements in the reclamation statutes that such projects are primarily for the benefit of irrigation.

In particular, plaintiffs place heavy reliance on Article 6 of the 1956 contract, which prohibits PacifiCorp from using water when it may be "needed or required by the United States or any [entity] obtaining water from the United States for use for domestic, municipal, and irrigation purposes on Project Land." Plaintiffs argue this language clearly evinces an intent to directly and specifically benefit irrigators.

Defendants argue Article 6, read in full, is simply an exchange of assurances between Copco and Reclamation that nothing in the contract would alter the pre-existing claims or water rights possessed by the parties to the contract. Defendants also note that this provision, by its terms, protects only persons taking water "from the United States." They assert this provision allows the United States to meet its obligations to such entities, but it does not expand the underlying rights held by those parties. While Article 6 makes it clear that Copco obtained a right to use water for power generation when such water was not needed by the United States or irrigators, nothing in Article 6 created or expanded any rights irrigators may have possessed to water in the basin. Those rights are created and governed by state water law and the irrigators' individual contracts with Reclamation. Therefore, defendants argue, Article 6 conferred no benefit to non-parties sufficient to create third party beneficiary rights.

PacifiCorp argues the contract here, particularly Article 6, created no new rights for the irrigators, but merely put irrigators on notice the government was not granting PacifiCorp any right to interfere with preexisting legal rights possessed by the irrigators. Therefore, PacifiCorp argues, any benefit to plaintiffs was incidental.

Defendants also argue plaintiffs' rights to water derive from their individual repayment contracts with Reclamation. The 1956 contract states the only benefits of the contract are to the parties themselves or their successors or assigns. Defendants assert plaintiffs are attempting to turn the 1956 contract into an entitlement to water in order to sidestep the limitations on water deliveries contained in their individual repayment contracts with Reclamation.

PacifiCorp cites *Norse v. Henry Holt and Co.*, 991 F.2d 563 (9th Cir.1993). *Norse* involved copyrighted letters of Harold Norse, which he made available at the public library. Any person copying at the library had to sign an agreement making clear the library could not give legal authority to publish materials. An author copied Norse's letters and included them in a book published by Holt. Norse sued, arguing he was a third party beneficiary of the library's contract. The Ninth Circuit rejected this claim because the agreement simply put the user on notice that the library did not grant any right to publish materials, and thus the benefit to Norse was purely incidental. *Id.* at 568.

Reclamation must deliver water to project irrigators in accordance with the rights held by the United States in the project and the irrigators' individual repayment contracts, subject to the availability of water. Under those contracts, water shortages caused by "drought, canal breaks, inaccuracy in distribution, or *other causes* will not result in any liability 'against the United States ... for any damages, direct or indirect, arising therefrom....'" Declaration of Karl Wirkus [# 163] Ex. B, p. 12–13 (emphasis added). Reclamation argues a water shortage could result from a drought, from Reclamation's obligation to satisfy senior tribal rights, or Reclamation's obligation to comply with other federal laws, such as the Endangered Species Act. *O'Neill v. United States,* 50 F.3d 677, 680–81 (9th Cir.1995) ("other causes" language in reclamation contract construed to covered Endangered Species Act listing). Defendants argue the repayment contracts

would preclude plaintiffs from suing the federal government if the above things were to occur.

These separate repayment contracts, while outside the issue of whether plaintiffs are third party beneficiaries to the 1956 contract, provide important context to the intentions of the parties to the 1956 contract. The court is allowed to look beyond the 1956 contract to make a determination regarding third party beneficiary status and finds these coexistent repayment contracts to be relevant evidence in making this determination. *Sepulveda v. Pacific Maritime Ass'n*, 878 F.2d 1137, 1139 (9th Cir.1989).

Viewing the entire record before the court, in the light most favorable to plaintiffs, I find plaintiffs have failed to demonstrate the existence of a material fact indicating they are intended third party beneficiaries to the 1956 contract. The 1956 contract operates to plaintiffs' benefit by impounding irrigation water, and certainly was entered into with irrigators in mind. However, plaintiffs are not parties to the contract and there is no manifestation of intent by the parties to provide to the many irrigators participating in the project the right to sue under the contract or veto proposed modifications to it. The provision in the 1956 contract that establishes minimum and maximum lake levels appears to benefit irrigators, but the level is subject to fluctuation and is accompanied by significant discretion in the government and PacifiCorp to go outside the range. Moreover, while PacifiCorp and Reclamation benefit directly from the above provision, plaintiffs benefit only indirectly through Reclamation's enhanced ability to satisfy its underlying but separate obligations to deliver water to plaintiffs and others. Such an indirect benefit is incidental and, therefore, insufficient to confer third party beneficiary status on plaintiffs.

The 1956 contract is not the source of plaintiffs' rights to water in the Klamath Basin. Rather, their water rights are found primarily in their individual repayment contracts with the federal government and in state water law. The irrigators' contracts with the government contain a clause holding the government harmless in the event of a shortage. Declaration of MacFarlane, Ex. M (a 1954 water user contract). To allow plaintiffs to sue for a shortage under the 1956 contract, to which they are not parties, in the face of the hold harmless provision contained in their individual repayment contracts, to which they are parties, would be inconsistent and is not supported by the record.

The language of the 1956 contract does not identify plaintiffs as intended beneficiaries of the contract. A review of the record as a whole, particularly the language of the contract itself, confirms this view. Article 15 limits intended beneficiaries to the parties to the contract. Under the arguments advanced by plaintiffs, most users of the Klamath Project water would stand as intended third party beneficiaries to the 1956 contract, a result not supported by the record. Moreover, the 1956 contract did not give plaintiffs water rights superior to those in plaintiffs' individual repayment contracts with Reclamation, although acceptance of plaintiffs' arguments would necessitate such a conclusion. Finally, plaintiffs' rights to water in the basin, whether as third party beneficiaries to the 1956 contract or under their individual repayment contracts with Reclamation, are subservient to senior tribal water rights and to subsequent legislative enactments by Congress, such as the Endangered Species Act. *O'Neill*, 50 F.3d at 680–81.

### 4. *Conclusion:*

The court finds the amended counterclaim constitutes an actual controversy and is therefore appropriate for declaratory judgment under 28 U.S.C. § 2201(a) due to the uncertainty surrounding current negotiations pertaining to the 1956 contract.

In paragraph 17 of its amended counterclaim, PacifiCorp seeks a declaratory judgement that: (1) plaintiffs are not third party beneficiaries to the 1956 contract with respect to irrigation water, and the contract creates no rights in plaintiffs to irrigation water; (2) the 1956 contract may be amended with regard to PacifiCorp's rights and obligations to operate Link River Dam without plaintiffs' consent; and, (3) PacifiCorp is

not liable to plaintiffs under the 1956 contract for implementing Federal defendants' water allocation decisions for the Klamath Project. [# 147], p. 4.

For the reasons set forth above, defendant PacifiCorp's motion for summary judgment on its amended counterclaim [# 164] is granted and its requested declarations are hereby adopted; defendant Reclamation's motion for summary judgment on defendant PacifiCorp's amended counterclaim [# 161] is granted; plaintiffs' motion to dismiss defendant PacifiCorp's amended counterclaim [# 151] is denied; and, plaintiffs' motion for summary judgment on defendant PacifiCorp's amended counterclaim [# 154] is denied.

Finally, defendant PacifiCorp's motion to strike [# 200] is denied. The record before the court does not support defendant's contention that these discussions amounted to "compromise negotiations" under Federal Rule of Evidence 408.

IT IS SO ORDERED.