# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT
_____

No. 11-1159
_____

ABF Freight System, Inc.,     *
        *

      Plaintiff-Appellant,     *

        *   Appeal from the United States
      v.                  *   District Court for the Western
        *   Western District of Arkansas.

International Brotherhood of Teamsters,   *
as and for themselves and as     *
representatives of a class of teamsters     *
local unions that are parties to the     *
National Master Freight Agreement;     *
Teamsters National Freight Industry     *
Negotiating Committee, as and for     *
themselves and as representatives of a     *
class of teamsters local unions that are     *
parties to the National Master Freight     *
Agreement; Teamsters Local Union 373,   *
as and for themselves and as     *
representatives of a class of teamsters     *
local unions that are parties to the     *
National Master Freight Agreement;     *
Teamsters Local Union 878, as and for     *
themselves and as representatives of a     *
class of teamsters local unions that are     *
parties to the National Master Freight     *
Agreement; YRC, Inc.; New Penn     *
Motor Express, Inc.; USF Holland, Inc.;   *
Trucking Management, Inc.,     *
        *

      Defendants-Appellees.     *

Submitted:  April 12, 2011
Filed:  July 6, 2011

_____

Before RILEY, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

ABF Freight System, Inc., sued YRC, Inc., New Penn Motor Express, Inc, USF Holland Inc. (collectively, "YRC"), the International Brotherhood of Teamsters and two of its locals (collectively, the "Union"), and the bargaining representatives of YRC and the Union (collectively, with YRC and the Union, "defendants"), for violation of a collective-bargaining agreement.  The district court dismissed ABF's complaint for lack of subject-matter jurisdiction, ruling that ABF lacked standing to sue because it did not show by a preponderance of the evidence that it had rights under the collective-bargaining agreement.  *See ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, ___ F. Supp. 2d ___, 2010 WL 5315584, at *5 (W.D. Ark. Dec. 20, 2010).  Having jurisdiction under 28 U.S.C. § 1291, this court vacates and remands.

I.

ABF and YRC are trucking competitors whose employees are represented by the Union.  Before 2008, ABF and YRC were part of a multi-employer bargaining unit represented by Trucking Management, Inc.  TMI negotiates periodically with the Union's representative, Teamsters National Freight Industry Negotiating Committee ("TNFINC").  These negotiations produce the National Master Freight Agreement ("NMFA"), which, in various versions, dates back to 1964.

In August 2007, before TMI and TNFINC began to negotiate a new NMFA, ABF withdrew its bargaining authority from TMI, and attempted to reach its own agreement with the Union.

ABF and the Union eventually adopted an "Interim Agreement," providing that ABF would become a "party and signatory to [the] successor National Master Freight Agreement." ABF agreed to implement the new NMFA's standards on work conditions (wages, hours, etc.). The Interim Agreement, signed on January 30, 2008, did not require ABF to re-join the multi-employer unit. The same day, ABF and the Union agreed to five side agreements, reserving specific rights to ABF if YRC closes and agreeing to reconvene.

TMI and TNFINC negotiated the 2008-2013 NMFA without ABF's participation.[1] In "PARTIES TO THIS AGREEMENT," the NMFA describes "Employers Covered" to include "individual Employers who become signator to this Agreement and Supplemental Agreements as hereinafter set forth." In "SCOPE OF AGREEMENT," the NMFA says that "other individual employers which have, or may, become parties to this Agreement" constitute a "single national multi-employer collective bargaining unit." On February 10, 2008, both ABF employees and YRC employees voted to ratify the 2008-2013 NMFA, with the ballots of both groups of employees aggregated to determine ratification. (Upon ratification, the Interim Agreement between ABF and the Union terminated by its own terms, but the five side agreements survived.)

Over the next three years, YRC and the Union negotiated three amendments to the NMFA that reduced the pay and benefits of YRC's Union employees, in exchange

_____

[1]TMI represented only YRC and USF Holland in the negotiations, as New Penn Motor Express also withdrew from TMI before the negotiations.

-3-

for similar reductions for YRC's executives and non-Union employees. YRC's employees alone ratified these amendments. While the third amendment was being negotiated, ABF requested to join the negotiations, but TNFINC refused, stating that ABF had a separate single-employer contract.

Hearing rumors of the concessions to YRC, ABF initially asked for equal concessions. After seeing the YRC-Union amendments, however, ABF sought "a cost reduction plan tailored for ABF and its employees," and later warned that "if the IBT remains entrenched in its position regarding [the imposition of] the YRC agreement [on ABF], it will be a waste of time and resources to meet further on this matter." ABF and the Union tentatively agreed on a separate package of concessions, but ABF's employees rejected it.

ABF filed a grievance pursuant to the NMFA's procedures, and simultaneously brought this case under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). ABF claims that the YRC-Union amendments violate provisions of the NMFA that: require employers to maintain work conditions – wages, hours, etc. – at the "highest standards" in effect at the time of the NMFA; and, prohibit employers from entering agreements that conflict with the NMFA. YRC, the Union, and TMI moved to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). The Union also moved to dismiss for failure to state a claim under Rule 12(b)(6). After an evidentiary hearing, the district court ruled that ABF lacked standing to sue under the NMFA, dismissed the case for lack of subject-matter jurisdiction, while denying as moot the 12(b)(6) motion. ABF appeals.

II.

The existence of subject-matter jurisdiction is a question of law that this court reviews de novo. *See Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137, 1140 (8th Cir. 1998). If the district court's jurisdictional ruling "is based on the complaint alone, or

-4-

on the complaint supplemented by undisputed facts evidenced in the record, the appellate court's review is limited to determining whether the district court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed." ***Osborn v. United States***, 918 F.2d 724, 730 (8th Cir. 1990) (internal quotation marks omitted). If the district court resolves disputed factual issues, its findings are reviewed for clear error. ***Id.*** No presumptive truthfulness attaches to the plaintiff's allegations of jurisdiction. ***Id.***

A.

The district court found that ABF lacked constitutional standing because it failed to show by a preponderance of the evidence that it had rights under the NMFA – either as a party or a third-party beneficiary. *See **Green Acres Enters., Inc. v. United States***, 418 F.3d 852, 856 (8th Cir. 2005) (burden of proving the existence of subject-matter jurisdiction is on the plaintiff).

Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction. *See **Faibisch v. Univ. of Minn.***, 304 F.3d 797, 801 (8th Cir. 2002). The "irreducible constitutional minimum of standing" is that a plaintiff show (1) an "injury-in-fact" that (2) is "fairly . . . trace[able] to the challenged action of the defendant" and (3) is "likely . . . [to] be redressed by a favorable decision" in court. ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).

B.

As to the Union defendants, ABF clearly has constitutional standing. In the Interim Agreement, ABF agreed to become a party to the new NMFA and implement its work conditions. In consideration, the Union agreed not to strike (or stop working)

so long as ABF adheres to the Interim Agreement. In view of the course of dealing between ABF and the Union – detailed at length by the district court – the Union may have defenses to ABF's claims. However, as to the Union defendants and its bargaining representative TNFINC, ABF has rights under the NMFA sufficient to show an injury-in-fact that is fairly traceable to the challenged acts of the union defendants and is likely redressable in court.

C.

1.

YRC argues that ABF has no constitutional standing to assert claims against YRC, because ABF cannot show an injury-in-fact as it lacks a "legally protected interest." An "injury-in-fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted).

A "legally protected interest" requires only a "judicially cognizable interest." In *Defenders of Wildlife*, the Court asked whether the interest was "cognizable" and whether plaintiffs were "among the injured." *Id.* at 562-63; *see also* **Bennett v. Spear**, 520 U.S. 154, 167 (1997) (omitting "legally protected interest" altogether, replacing it with "judicially cognizable interest" in defining injury-in-fact); **Parker v. District of Columbia**, 478 F.3d 370, 377 (D.C. Cir. 2007) ("[W]hen the Supreme Court used the phrase 'legally protected interest' as an element of injury-in-fact, it made clear it was referring only to a 'cognizable interest.'"), *aff'd sub nom.* **District of Columbia v. Heller**, 554 U.S. 570 (2008).

This court also focuses on "judicially cognizable interest" in the definition of "injury-in-fact." *See* **Braden v. Wal-Mart Stores, Inc.**, 588 F.3d 585, 591 (8th Cir. 2009) ("'Injury in fact' is an invasion of a legally cognizable right."); **Parkhurst v.**

***Tabor***, 569 F.3d 861, 866 (8th Cir. 2009) (holding that a private citizen lacks a "judicially cognizable interest" in the prosecution or nonprosecution of another, and not using the phrase "legally protected"), *quoting **Linda R.S. v. Richard D.***, 410 U.S. 614, 619 (1973); ***Sierra Club v. Robertson***, 28 F.3d 753, 758 (8th Cir. 1994) (shifting description of plaintiff's interest from "legally protected" to "cognizable").

YRC asserts that a plaintiff must prove it has rights under a contract to have standing to sue for its breach, citing *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care LLC*, 433 F.3d 181 (2d Cir. 2005); *ITT Hartford Life & Annuity Insurance Co. v. Amerishare Investors, Inc.*, 133 F.3d 664 (8th Cir. 1998); *Castle v. United States*, 301 F.3d 1328 (Fed. Cir. 2002); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964 (11th Cir. 2005); *Souter v. International Union, UAW*, 993 F.2d 595 (7th Cir. 1993); and *Sepulveda v. Pacific Maritime Ass'n*, 878 F.2d 1137, 1139 (9th Cir. 1989).

In *Merck-Medco*, the class appeared to include a named plaintiff who had "failed to produce evidence of a relationship between her Plan and [defendant] Medco." ***Merck-Medco***, 433 F.3d at 200. On appeal following remand, the court agreed that the plaintiff had constitutional standing; although each agreement the plaintiff produced was "signed by only one party," the agreements "still ha[ve] evidentiary value of both an intent to execute the [a]greement, and progress toward such execution." 504 F.3d 229, 242 (2d Cir. 2007) (alterations in original) (internal quotation marks omitted). The *Merck-Medco* case requires some facts of a contractual relationship to show standing, but not the legal conclusion of a valid, enforceable contract.

YRC's remaining cases all involve plaintiffs that did not claim to be parties or signatories to the agreements on which they sued. *See **ITT Hartford***, 133 F.3d at 669-70 (denying guarantors' motion-to-compel-arbitration, because they did not claim to be signatories to the only agreement with an arbitration provision); ***Castle***, 301 F.3d

at 1337-39 (holding that thrift's shareholders lacked standing to sue, because the parties to the agreement did not intend to benefit the shareholders independently of their shareholder status; the shareholders did not claim standing as parties to the agreement – Appellees' Br., 2001 WL 34624881, at *18-21); **Bochese**, 405 F.3d at 981 ("The trouble with this claim is that Mr. Bochese has not established that he has any legally cognizable interest in the subject matter of the Fourth Contract Agreement. . . . It is undisputed that [he] was not a party to the . . . Agreement," and "was not an intended beneficiary."); **Souter**, 993 F.2d at 597 & n.1 (denying standing to employee's wife suing his union and employer for breaches of duty-of-fair-representation and of a collective-bargaining-agreement, who was not employed or represented by the defendants and whose claims "are derivative of the claims of Patrick Souter by virtue of her marital property interest in her husband's past and future wage loss.") (internal quotation marks omitted); **Sepulveda**, 878 F.2d at 1139 (denying standing to unsuccessful applicants for employment who conceded that they were "not members of the collective bargaining unit").

None of YRC's cases denied standing to a plaintiff that produced facts indicating it was a party to a breached contract. Here, ABF signed an agreement with the Union, which purports to make it a signatory to the NMFA. The NMFA permits employers to be added to it. The NMFA was ratified by ABF's employees as well as YRC's. ABF (as a "contract administration member") administers the NMFA jointly with YRC (a bargaining member). Whatever the merits of these points, ABF has produced sufficient facts, for standing purposes, indicating a judicially cognizable interest in the NMFA. *See, e.g.*, **Novartis Seeds, Inc. v. Monsanto Co.**, 190 F.3d 868, 871 (8th Cir. 1999) ("That a plaintiff must have standing . . . requires that a plaintiff allege a judicially cognizable and redressable injury. . . . We have no doubt that plaintiff has standing in the constitutional, Article III sense" to sue defendant for breach of their licensing agreement.) (internal quotation marks omitted). The district court erred in deciding the merits of ABF's rights under the NMFA, rather than whether ABF had a judicially cognizable interest in the NMFA. "It is crucial . . . not

to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." **Braden**, 588 F.3d at 591, *citing* **Ass'n of Data Processing Serv. Orgs. v. Camp**, 397 U.S. 150, 152-54 (1970); *accord* **Novartis Seeds**, 190 F.3d at 871 ("[T]he distinction between [merits questions] . . . and subject-matter jurisdiction is a vital one.").

ABF alleges that defendants' breach of the NMFA caused it economic harm, which is concrete, particularized, and actual. *See, e.g.*, **Rodeway Inns of Am., Inc. v. Frank**, 541 F.2d 759, 763 (8th Cir. 1976), *citing Ass'n of Data Processing Serv. Orgs.*, 397 U.S. at 151-53. In sum, ABF has satisfied each element necessary to demonstrate an injury-in-fact to a judicially cognizable interest.

2.

A plaintiff must show that its injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." **Spear**, 520 U.S. at 167, *quoting* **Defenders of Wildlife**, 504 U.S. at 560. TMI argues that ABF's injury is not traceable to defendants' alleged breach of the NMFA, because any injury flows from ABF's own rejection of the YRC-Union amendments, or its employees' refusal to ratify separate concessions.

A plaintiff who causes its own injury does not satisfy the traceability prong. *See* **McConnell v. FEC**, 540 U.S. 93, 228 (2003) (candidates who refused large contributions could not trace any inability to compete to the statute, due to their own personal choice); **Brotherhood of Locomotive Eng'rs & Trainmen v. Surface Transp. Bd.**, 457 F.3d 24, 28 (D.C. Cir. 2006) ("This injury was not in any meaningful way 'caused' by the Board; rather, it was entirely self-inflicted and therefore insufficient to confer standing upon the Union.").

"Not every infirmity in the causal chain deprives a plaintiff of standing." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000). In *Curtis Lumber Co., Inc. v. Louisiana Pacific Corp.*, 618 F.3d 762 (8th Cir. 2010), plaintiff sued for rebates that defendant allegedly owed the plaintiff's customers. Defendant responded that plaintiff's injuries were not traceable to defendant's refusal to pay rebates, because plaintiff voluntarily paid them. *See id.* at 770. This court reasoned that plaintiff's injuries "would not have occurred had [defendant] paid rebates owed to the customers." *Id.*; *cf. Spear*, 520 U.S. at 168-69 (traceability satisfied where plaintiff's harm was "produced by [defendant's] determinative or coercive effect" upon a third party).

Here, defendants' challenged conduct is the alleged breach of the NMFA; ABF's injury is the resulting economic harm. Neither ABF's rejection of the YRC-Union package, nor its employees' rejection of separate concessions, is a sufficient independent cause of ABF's economic harm to defeat standing. Had defendants not allegedly breached the NMFA, ABF would not have been forced to choose between options that were unattractive to its management (the YRC-Union amendments) or to its employees (the ABF-specific concessions). For purposes of constitutional standing, ABF's injuries are fairly traceable to defendants' challenged conduct.

3.

ABF seeks a number of remedies for the alleged breach, including an order invalidating the YRC-Union amendments, an order that the NMFA not be amended unless all parties agree to it, and damages. Any of these remedies might likely redress ABF's injury. *See Defenders of Wildlife*, 504 U.S. at 560.

In sum, ABF has satisfied the "irreducible constitutional minimum of standing" by meeting the Court's three-part test. *See id.* at 560-61.

-10-

B.

ABF invokes federal question jurisdiction under 28 U.S.C. § 1331 because it sues for violation of a labor agreement under section 301(a). Section 301(a) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**29 U.S.C. § 185(a)**. Section 301(a) creates a "cause of action." *Tripp v. Angelica Corp.*, 921 F.2d 794, 795 (8th Cir. 1990). A plaintiff must have "personal standing" to sue under section 301(a). *Wooddell v. IBEW, Local 71*, 502 U.S. 93, 99 n.4 (1991). Section 301 confers subject-matter jurisdiction in the district courts over suits for violations of union contracts. *See* *Textron Lycoming Reciprocal Engine Div., Avco Corp. v. UAW*, 523 U.S. 653, 661-62 (1998).

Defendants argue that the existence (or violation) of a collective-bargaining agreement is a jurisdictional requirement under section 301(a), and that the district court properly proceeded to address whether ABF has rights under the NMFA labor contract. This court has "the right and duty to raise and determine the district court's subject matter jurisdiction at any time." *Borntrager v. Cent. States Se. & Sw. Areas Pension Fund*, 577 F.3d 913, 919 (8th Cir. 2009).

The Supreme Court has announced a "bright line" standard:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly

-11-

instructed . . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) (citations omitted).

The two circuits that have addressed section 301(a) in light of *Arbaugh* have held that its elements are not jurisdictional. *See Winnett v. Caterpillar, Inc.,* 553 F.3d 1000, 1007 (6th Cir. 2009) (existence of union contract not jurisdictional); *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs*, *Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (same); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 485-87 (6th Cir. 2009) (per curiam) (violation of union contract not jurisdictional). These courts reasoned that Congress has not clearly stated that the existence (or violation) of a labor contract is a limit on subject-matter jurisdiction. *See Winnett*, 553 F.3d at 1006-07; *Tackett*, 561 F.3d at 485-87; *Pittsburgh Mack Sales & Serv., Inc.*, 580 F.3d at 189-90.

The Supreme Court has recently stated:

Congress . . . need not use magic words in order to speak clearly on this point. . . . When a long line of this Court's decisions left undisturbed by Congress, has treated a similar requirement as "jurisdictional," we will presume that Congress intended to follow that course.

*Henderson v. Shinseki*, ___ U.S. ___, 131 S. Ct. 1197, 1203 (2011) (citations omitted). The Court's decisions on section 301(a) are clear. In *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448 (1957), the Court emphasized that section 301(a) is "more than jurisdictional," empowering courts to fashion a body of common law for the enforcement of collective bargaining agreements and "to provide the necessary legal remedies." *Id.* at 455. Forty years later, the Court held: "Because the . . . complaint alleges no violation of the collective-bargaining agreement, neither we

nor the federal courts below have subject matter jurisdiction over this case under § 301(a) of the Labor-Management Relations Act." *Textron*, 523 U.S. at 661-62; *see also **Teamsters Nat'l Auto. Transp. Indus. Negotiating Comm. v. Troha***, 328 F.3d 325, 328 (7th Cir. 2003) ("The holding of *Textron* is that only cases that allege violations of the collective bargaining agreement fall under the jurisdictional grant of § 301."). After *Arbaugh*, the Court continues to describe section 301(a) as conferring federal jurisdiction. *See **Granite Rock Co. v. Int'l Bhd. of Teamsters***, 130 S. Ct. 2847, 2864 (2010) ("[S]ection 301 . . . is a grant of jurisdiction only to enforce contracts."), *quoting **Brazinski v. Amoco Petroleum Additives Co.***, 6 F.3d 1176, 1180 (7th Cir. 1993). Because Congress has not disturbed the Court's long line of decisions treating section 301(a) as jurisdictional, this court cannot agree with the Third and Sixth Circuits.

The issue is whether the district court has subject-matter jurisdiction over ABF's claims. *See **Arbaugh***, 546 U.S. at 513 & n.10 (2006), *citing **Bell v. Hood***, 327 U.S. 678, 682-83 (1946). ABF sued the defendants for the violation of a collective-bargaining agreement. ABF and the Union agreed that ABF would become a party to the NMFA on which ABF sues, and the Union and the other defendants plainly are parties to the NMFA. ABF has stated colorable claims against the Union under section 301(a). The district court's conclusion that ABF had absolutely no rights under the NMFA against the Union is erroneous. *See **Wooddell***, 502 U.S. at 98 ("[A] suit properly brought under § 301 must be a suit . . . for violation of a contract between an employer and a labor organization . . . .").

As to ABF's claims involving YRC, the district court has subject-matter jurisdiction (at least) under 28 U.S.C. § 1367(a):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**28 U.S.C. § 1367(a)**. "Claims within the action are part of the same case or controversy if they 'derive from a common nucleus of operative fact.'" *Myers v. Richland County*, 429 F.3d 740, 746 (8th Cir. 2005), *quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). A plaintiff's claims derive from a common nucleus of operative fact if the "claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. Having original jurisdiction over ABF's 301(a) action against the Union, the district court had supplemental jurisdiction over ABF's claims against YRC (regardless of their eventual merit), as the claims against all defendants arose from the same facts. *See Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1026 (6th Cir. 2001); *Brazinksi*, 6 F.3d at 1181-82. Once original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory, absent certain statutory exceptions. *See Southern Council of Indus. Workers v. Ford*, 83 F.3d 966, 968 (8th Cir. 1996) (per curiam); *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994). The district court had subject-matter jurisdiction over ABF's claims.

C.

The Union argues that the district court lacked subject-matter jurisdiction to appoint a substitute grievance committee to hear ABF's claims – the first remedy ABF requests. The Union cites cases recognizing that the preferred method for resolving labor disputes is the method agreed upon by the parties, even if it is potentially biased. ABF wants its grievance heard by a neutral committee. This court reviews exhaustion issues de novo. *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 68 (8th Cir. 1997).

At this jurisdictional stage of the litigation, even a lack of jurisdiction to grant one remedy does not doom an entire suit for lack of subject-matter jurisdiction. *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 561 (1968) ("[T]he breadth or narrowness of the relief which may be granted under federal law in § 301 cases is a distinct question from whether the court has jurisdiction over the parties and the subject matter. Any error in granting or designing relief 'does not go to the jurisdiction of the court.'"), *quoting Swift & Co. v. United States*, 276 U.S. 311, 331 (1928). This court need not consider potential remedies at this time.

D.

The Union argues that ABF's claims are preempted because: (1) the National Labor Relations Board (the NLRB) has primary jurisdiction over claims arguably protected or arguably prohibited by the National Labor Relations Act in light of *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959); and (2) the NLRB has exclusive jurisdiction to resolve issues of representation under a labor agreement. *See Minn-Dak Farmers Co-op. Employees Org. v. Minn-Dak Farmers Co-op.*, 3 F.3d 1199, 1200-01 (8th Cir. 1993); *Construction, Bldg. Material, Etc. Workers, Local 682 v. Bussen Quarries, Inc.*, 849 F.2d 1123, 1125 (8th Cir. 1988).

ABF does claim that the Union breached the parties' collective-bargaining agreement. "The *Garmon* preemption doctrine is simply 'not relevant' where there is a claim under section 301 asserting a breach of the collective bargaining agreement." *Local Union No. 884 v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1356 (8th Cir. 1995), *quoting William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville*, 417 U.S. 12, 16 (1974) (additional internal quotation marks omitted). Even if a party's conduct might be an unfair labor practice, the district court has concurrent jurisdiction of an alleged section 301 claim. *Id.*

The NLRB does not have exclusive jurisdiction here, because ABF's claims are not primarily representational in nature. *See Local Union 204 of Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 419 (8th Cir. 1982) (district court's jurisdiction under section 301(a) is "determined by examining the major issues to be decided as to whether they can be characterized as primarily representational or primarily contractual"). The complaint in *Minn-Dak* did not allege the violation of a labor agreement. *See Minn-Dak*, 3 F.3d 1199, 1200-01. While the complaint in *Bussen Quarries* did allege such a violation, the case turned on whether "owner-operators" were independent contractors rather than employees covered by the agreement. *See Bussen Quarries*, 849 F.2d at 1124-25. This case does not turn on primarily representational issues, but whether defendants breached any contractual duties to ABF.

## III.

The defendants alternatively claim that the district court should have dismissed ABF's complaint for failure to state a claim pursuant to Rule 12(b)(6). The district court did not convert the 12(b)(1) motion into a 12(b)(6) motion, but rather denied the 12(b)(6) motion as moot. It is true that an appellate court may treat a Rule 12(b)(1) issue as a Rule 12(b)(6) issue. *See Morrison v. Nat'l Australia Bank Ltd.*, ___ U.S. ___, 130 S. Ct. 2869, 2877 (2010) ("[S]ince nothing in the analysis of the court[] below turned on the [jurisdictional] mistake, a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion."); *Boock v. Shalala*, 48 F.3d 348, 353 (8th Cir. 1995) (if a claim is clearly meritless but not patently frivolous, this court may affirm under Rule 12(b)(6) a district court's dismissal under Rule 12(b)(1)); *Less v. Lurie*, 789 F.2d 624, 625 & n.1 (8th Cir. 1986) (while reversing a district court's dismissal of a case for failure to state a claim, this court approved, without discussion, the district court's treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion).

In the posture here, this court cannot evaluate ABF's claims under Rule 12(b)(6). The district court's 12(b)(1) ruling resolved factual issues that courts may not resolve on motions under Rule 12(b)(6), and did not provide proper notice of such a conversion. *See Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008) (a Rule 12(b)(1) ruling may resolve disputed facts, while a 12(b)(6) dismissal must be decided on the pleadings); *Layton v. United States*, 919 F.2d 1333, 1335 (8th Cir. 1990) ("[I]f a district court elects to convert a 12(b)(1) motion into a 12(b)(6) motion subject to a summary judgment disposition, the court should notify the parties of the conversion . . . ."). The proper forum for further motions is the district court.

## IV.

The judgment of the district court is vacated, and this case is remanded for further proceedings.

_____

-17-