# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1475

_____

Leticia Roberts; Calvin Sayers

*Plaintiffs - Appellants*

v.

Tony Thompson, in his official capacity as Black Hawk County Sheriff; Black Hawk County

*Defendants - Appellees*

------------------------------

Cato Institute; Institute for Justice; Law School Clinics and Clinical Professors; NAACP Iowa-Nebraska State Area Conference of Branches

*Amici on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: January 15, 2026
Filed: May 20, 2026

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Black Hawk County, Iowa charges its jail inmates fees for booking, room, and board ("jail fees"). The County Sheriff's Office operates the jail and obtains confessions of judgment as part of its fee collection process. Leticia Roberts and Calvin Sayers, two former inmates of the jail, filed a 42 U.S.C. § 1983 action against Black Hawk County and County Sheriff Tony Thompson (collectively, "the County"). Roberts and Sayers contend that the County's use of confessions of judgment violates their Fourteenth Amendment due process rights. The district court granted the County's motion to dismiss for lack of standing and failure to state a claim. We vacate and remand for further proceedings.

## I.  Background

"In this appeal from the grant of a motion to dismiss, we accept as true the well-pleaded allegations in the amended complaint." *Kelly v. City of Omaha*, 813 F.3d 1070, 1074 (8th Cir. 2016). Black Hawk County charges jail inmates seventy dollars per day of incarceration plus a twenty-five-dollar booking fee. Ordinarily, if a released inmate does not pay voluntarily, a county would need to collect unpaid fees by filing a civil reimbursement claim (the "civil reimbursement process"). *See* Iowa Code § 356.7(1). The civil reimbursement process requires review by an Iowa court, which can decide the claim on the merits. Iowa Code § 356.7(3); *State v. Abrahamson*, 696 N.W.2d 589, 593 (Iowa 2005).

Instead of using the civil reimbursement process, the County has instituted a written policy compelling inmates to sign a confession of judgment at the time of their release. The County's confession of judgment form indicates the amount of jail fees owed as the "balance due." Jail officials seize any money on the person of an inmate or in his commissary account and list that on the form as the "amount

-2-

paid."[1]  By signing the form, the inmate "hereby swear[s] on oath . . . that [he] owe[s] the [remaining] sums of money as indicated above, and that [he] confess[es] judgment in the amount of the above balance due."  Further, an inmate swears that he "understand[s] that if judgment is entered against [him], on this confession, [he] will further be liable for service of process fees and other court costs incurred in association with that judgment."  The County requires inmates to make minimum payments of twenty-five dollars per month towards their jail-fee debt.  This monthly payment amount is listed on the confession.  The County can file each confession of judgment with the clerk of the Iowa district court.  *See* Iowa Code §§ 676.1, 676.3. The clerk then automatically enters judgment and may order execution without judicial review or an opportunity for the debtor to be heard.  Iowa Code § 676.4.

Roberts and Sayers both served brief periods in the county jail for operating a motor vehicle while intoxicated.  Roberts served two separate sentences for a total of nine days in 2022.  When Roberts was released from her first sentence, jail officials told her that she would receive her personal effects and could leave once she signed a confession of judgment.[2]  After signing the confession and leaving jail, she failed to make her monthly payments.  About three months later, the Sheriff's Office called her seeking to collect the jail fees.  Roberts responded that she could not pay the jail fees because she needed the money to support her children.  The Sheriff's Office sent her a collection letter two weeks later.  The letter warned that her refusal to pay had resulted in "further enforcement steps" that "may increase the total amount due."  After she had served her second sentence, a uniformed deputy visited her home and tried to collect her debt.  The deputy stated the Sheriff's Office "would not bother her as long as she made monthly payments."  Starting the next

---

[1]Iowa law would typically require the County to return any seized money to a released inmate; here, the County keeps the money because the inmate purportedly agrees, through the confession, to pay that money towards his debt.

[2]Because she served two sentences, Roberts was released twice.  She signed a confession of judgment each time under substantially similar circumstances.

month and continuing for more than a year, Roberts made payments of five dollars each month.

Sayers incrementally served one sentence of fifty-seven days between 2022 and 2024. During his release, Sayers signed a confession of judgment "because he believed he had no other choice." The confession of judgment credited Sayers the seventy-five dollars that jail officials had confiscated from him. Sayers made one additional payment of fifty dollars approximately five weeks after his release. He does not allege that the County pursued collection efforts against him. Neither Roberts nor Sayers allege that the County filed the confessions of judgment with the clerk of the Iowa district court.

On May 13, 2024, Roberts and Sayers sued the County under 42 U.S.C. § 1983 for violating their Fourteenth Amendment rights by depriving them of property without due process.[3] In their first amended complaint, Roberts and Sayers alleged that the County's practices, including the compelled confessions of judgment, unlawfully deprived them of any process by which they "can challenge the imposition and collection of jail fees." Roberts and Sayers sought (1) damages, (2) declaratory relief that the confessions of judgment they signed are invalid and unenforceable, and (3) injunctive relief prohibiting the County from using those confessions of judgment to collect jail fees or filing them for judgment. Roberts and Sayers then moved for a preliminary injunction.

The County moved to dismiss for lack of jurisdiction, arguing Roberts and Sayers lacked standing. *See* Fed. R. Civ. P. 12(b)(1). In the alternative, the County moved to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The district court granted the motion to dismiss for lack of jurisdiction, finding that Roberts and Sayers would have owed jail fees whether or not they had signed the confessions of judgment. Therefore, their alleged loss of money was neither

---

[3]Their complaint raised other claims, but they did not appeal dismissal of those claims.

traceable to the County's confession of judgment policy nor could a favorable decision redress their injuries through retrospective or prospective relief. The district court also explained that, if it had jurisdiction, it would have dismissed the due process claim for failure to state a claim because Roberts's and Sayers's payments were voluntary. The district court denied the motion for a preliminary injunction as moot.

Roberts and Sayers moved for leave to amend their complaint for a second time, which the district court denied. Roberts and Sayers appeal the district court's dismissal of the first amended complaint and denial of leave to amend.[4]

## II. Discussion

We begin by addressing whether Roberts and Sayers have standing to pursue their claim. We review whether a plaintiff has standing *de novo*. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). The district court analyzed the County's motion as raising a "facial attack" on standing. *See id.* "In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* Therefore, we take all facts alleged as true, draw all reasonable inferences in Roberts's and Sayers's favor, and "consider only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *See id.* (citation modified). Because Roberts and Sayers are at the pleading stage, they must allege sufficient facts to make standing plausible. *See*

_____

[4]On appeal, the County argues that Roberts and Sayers did not pursue this due process claim in the district court and suggests they are changing their theory of the case. We disagree. Roberts and Sayers's theory on appeal is consistent with the first amended complaint and the course of litigation in the district court. We decline to address the County's alternative framing of their allegations. *See Ivey v. Audrain Cnty.*, 968 F.3d 845, 851 (8th Cir. 2020) ("The principle of party presentation counsels against adopting theories of a plaintiff's case that he does not advance, much less one that he expressly disclaims.").

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The irreducible constitutional minimum of standing is that a plaintiff show (1) an injury-in-fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision in court." *Carlsen*, 833 F.3d at 908 (citation modified). "In assessing a plaintiff's Article III standing, we must assume that on the merits the plaintiffs would be successful in their claims." *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016) (citation modified). Roberts and Sayers also "must demonstrate standing separately for each form of relief sought." *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Accordingly, we begin by examining Roberts's and Sayers's standing to seek damages. First, Roberts and Sayers satisfy the injury-in-fact element of standing. An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S at 560 (citation modified). The deprivation of a protected property interest without due process constitutes an injury-in-fact. *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016). Roberts and Sayers have protected property interests in the money collected for their jail fees. *See Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 923-24 (8th Cir. 2016). Because we assume that Roberts and Sayers would be successful on the merits, we assume that the County's use of confessions of judgment is constitutionally inadequate process. *See Am. Farm Bureau Fed'n*, 836 F.3d at 968. Roberts and Sayers plausibly allege the County actually deprived them of their interests in their money without due process, so they both allege an injury-in-fact.

Second, Roberts and Sayers satisfy the traceability element of standing. The district court concluded otherwise because Roberts and Sayers would have nonetheless owed the underlying jail fees under a constitutionally adequate process. We disagree. A plaintiff "must show that his injury is fairly traceable to the

challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Carlsen*, 833 F.3d at 909-10 (citation modified). Roberts and Sayers allege that they received constitutionally inadequate process because the County forced them to sign confessions of judgment. Roberts and Sayers allege that the County required them to sign the confessions before they were released. They also describe the County's practice of demanding that an inmate sign a confession before returning the inmate's personal effects. Without those confessions of judgment, the County would need to collect jail fees through the civil reimbursement process. Roberts and Sayers argue that the civil reimbursement process would be constitutionally adequate and provide them with an opportunity to assert challenges to the jail fee collection. They identify several challenges they could possibly raise under Iowa law, including that the jail fees are inaccurately calculated or excessive. Roberts and Sayers plausibly allege that the confession of judgment procedure gives them no adequate opportunity to assert those challenges. Therefore, Roberts and Sayers sufficiently allege that their injuries "flow directly from" and are traceable to the County's confession of judgment policy. *See Carlsen*, 833 F.3d at 910. Finally, Roberts and Sayers have pleaded that damages would redress the failure to supply them with adequate processes. They seek nominal damages and compensatory damages for money they were required to pay without due process. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Hughes*, 840 F.3d at 994.

Next, we conclude that Roberts and Sayers also have standing to seek injunctive or declaratory relief. Past injury alone does not show standing to seek injunctive or declaratory relief. *Webb ex rel. K.S. v. Smith*, 936 F.3d 808, 814-15 (8th Cir. 2019). If a plaintiff has a past injury-in-fact, meets the other requirements of standing, and shows that he faces "a real and immediate threat that [he] would again suffer similar injury in the future," then he has standing to seek injunctive or declaratory relief. *Frost v. Sioux City*, 920 F.3d 1158, 1161-62 (8th Cir. 2019). The injury Roberts and Sayers suffered will recur if the County uses the confessions of judgment to collect more money by, for example, filing the confessions. Roberts and Sayers allege that the County has a policy of maintaining confessions of

judgment for future filing or other use. The County has defended this policy throughout this litigation. Because the policy is still in effect and the confessions of judgment are still in the County's possession, Roberts and Sayers plausibly allege a real and immediate threat that the County will file the confessions, resulting in new deprivations without adequate process. *See Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904, 915 (8th Cir. 2025) (holding that where government "s[ought] to enforce" the challenged law, and law could apply to plaintiff, there was "likely a substantial risk" that the plaintiffs would suffer injury (citation modified)).

As we explained above, the procedural injury Roberts and Sayers allege is traceable to the County. The injunctions Roberts and Sayers seek would prevent the County from using the confessions and redress that injury. Therefore, Roberts and Sayers have standing to seek injunctive and declaratory relief.

The County argues that Roberts's and Sayers's injuries are not traceable to its conduct because it did not file the confessions of judgment. Therefore, it argues that the confessions of judgment did not cause Roberts's and Sayers's losses of property and thus cannot cause a due process violation.

We disagree for two reasons. First, with reasonable inferences made in their favor, Roberts and Sayers both plausibly allege that they only made post-release payments because they feared the County would file the confessions of judgment. "Standing may be based on a substantial risk of harm that prompts plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Hughes*, 840 F.3d at 992 (citation modified). Roberts and Sayers generally allege that the County uses the confessions to compel them and others to pay. They also make specific individual allegations. Roberts alleges she paid five dollars each month because she believed these minimal payments would allow her to avoid further enforcement. The County warned her that further delays in payment might result in further enforcement steps and increase her debt. Because her confession of judgment provides for increased penalties if the County files it, we reasonably infer that the County's warning regarding "further enforcement steps" referred to filing the confession and that

Roberts paid to avoid this outcome. For his part, Sayers alleges that he did not believe he had a choice when he signed his confession of judgment. Given the short time that passed between Sayers signing his confession of judgment and making a payment in the amount it required, we can reasonably infer that the confession of judgment motivated his payment. At this stage, that suffices.[5] Second, without Sayers's confession of judgment, the jail officials could not have kept the money seized from him. Thus, the County's conduct directly caused Sayers's loss of seventy-five dollars.

The County asserts that Roberts and Sayers could wait for it to file the confessions of judgment and contest them in court after execution. If a court voids the confessions, they could then present defenses to a fee claim in a subsequent proceeding. Even if Roberts and Sayers can contest the confessions this way, it does not impact our standing analysis. "Determining the adequacy of the process is generally a merits question, even if a plaintiff does not use the process provided." *Hughes*, 840 F.3d at 993. Roberts and Sayers have standing to pursue their claims.

Lastly, we address the district court's alternative reasoning that the first amended complaint did not sufficiently state a claim for deprivation of property without due process. "We review *de novo* a district court's dismissal for failure to state a claim, taking all facts alleged in the complaint as true . . . [and] draw[ing] all reasonable inferences in favor of plaintiffs." *Kelly*, 813 F.3d at 1075. Roberts and Sayers must allege sufficient factual matter to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

---

[5]*Avalos v. Baca*, 596 F.3d 583 (9th Cir. 2010), is inapposite. The County argues *Avalos* establishes that coercive waivers of rights can never be the basis for a constitutional claim. This is a mischaracterization of *Avalos*. In *Avalos*, a plaintiff had an existing civil rights claim and alleged that the defendants had coerced him into waiving that claim. *Id.* at 589-90. The Ninth Circuit held the waiver of the claim did not create a second claim. *Id.* at 590-91. Here, the County's use of confessions of judgment to deprive property is the basis for the claim in the first place.

The district court concluded that any money paid by Roberts and Sayers was paid voluntarily because "[Roberts and Sayers] were not ordered by a court to pay the jail fees. [Roberts and Sayers] were asked by [the County] to pay the fees, and [they] paid the fees." Therefore, the district court concluded the defendants did not cause a deprivation. As we explained above, a reasonable inference from the first amended complaint is that Roberts and Sayers were required by the County to execute the confessions of judgment and only paid because of the threat the County would file them. And the County has not argued that requiring them to sign the confessions was *not* coercive. Further, the district court's holding does not account for the seventy-five dollars seized from Sayers. Therefore, the district court erred by finding that dismissal would be appropriate on this basis.

Before the district court, the County also argued that confessions of judgment are constitutionally adequate process. "Although we may affirm a dismissal on grounds not relied upon by the district court, where the parties did not adequately develop an issue, remanding to allow the district court to address the matter in the first instance is appropriate." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1033-34 (8th Cir. 2012). The district court did not rule on this basis and the parties have not adequately developed this issue on appeal. Therefore, we reverse the district court's dismissal on standing and lack of deprivation grounds. We leave any other issues regarding the sufficiency of the first amended complaint for the district court to address.[6]

## III. Conclusion

For the foregoing reasons, we vacate the district court's dismissal of the due process claim in the first amended complaint and remand for further proceedings consistent with this opinion.

_____

_____

[6] Roberts and Sayers explicitly request that we consider their motion for leave to amend only if we affirm the district court's standing analysis. Because we reverse, we do not reach that question.